## Shaffer *versus* Lowry *et al.*

To constitute a title to land under the statute of limitations, there must be twenty-one years actual, adverse possession, continued without interruption.

Where a man settled upon land, supposing it to be vacant, and died, leaving his widow and children in possession, and the owner of the legal title, before the occupant's title was complete under the statute of limitations, by threatening a resort to legal proceedings, induced the widow to surrender to him the possession; the possession being thus interrupted will arrest the running of, the statute in favour of the heirs of the former occupant.

Error to the Common Pleas of *Indiana county.*

In April, 1822, a man by the name of James Hill, supposing the land in dispute to be vacant, went upon it for the purpose of making a settlement. He raised a cabin upon it, which was occupied by his sons and tenants until 1824, when he sold it to Hugh Cameron. Cameron went into possession, claiming as vacant land 330 acres, built a new house and barn upon it, cleared and fenced 25 or 30 acres; and, in 1827 or 1828, had a survey made including 333 acres. In 1832 he sold to William Shelby, who, in February, 1835, sold to Martin Shook. Shook died in January, 1836, leaving a widow and several children residing on the land.

It turned out that the land had been appropriated by warrant and survey, and that the legal title was in the heirs of James C. Fisher, deceased. The agent of these heirs, in 1839, sold a part of the land to a man by the name of Wilson, who, by threatening the widow of Shook, to have her dispossessed by the sheriff, induced her to surrender to him the possession. She purchased from him twenty acres of the land, and went to live there until a short time afterwards, when she married Wilson, with whom she lived upon the land in dispute. In 1843 Wilson's interest was sold at sheriff's sale, and is vested in the defendants. In 1849, or 1850, Shook's heirs attempted to regain possession, but were prevented by threats of those in possession.

[Shaffer *v.* Lowry.]

The plaintiff is one of the heirs of Martin Shook, and the other interests were vested in him.

The Court below (BURRELL, P. J.) charged the jury as follows:—

"The plaintiff's claim to the land in dispute, if good at all, is good as a title under the statute of limitations. The defendants have shown warrants and surveys, and that they cover the land in controversy, and the title to these surveys in James C. Fisher, under whom they claim. Has the plaintiff, then, made out a title under the statute? In order to complete such a title, the possession must be for twenty-one years, and must be adverse, and exclusive of the owner, and must be so kept up for that period.

"It may be doubtful if there was such a possession. But supposing there was, commencing in 1822, by Hill's first improvement, yet, in 1838, we find that Wilson buys from Shoemaker, Fisher's agent, and goes into possession.

"Plaintiff alleges that this possession was illegally obtained by threats; that it should be considered as taken under the widow of Shook, and that, like her, Wilson held as a trustee for Shook's children, under whom the plaintiff claims. The facts are not contested. The evidence is that, after Wilson bought from Shoemaker, he threatened the widow that, if she did not give him peaceable possession, he would resort to the law. This was not illegal: and, therefore, when Wilson got possession, he got it for himself. He came in, not under, but hostile to the Shook title. His entry was that of a vendee of Fisher, the owner of the land, and put a stop to the running of the statute. The widow's remaining there does not alter the case, because adverse possession, to make title under the statute, must be exclusive of the owner. The defendants are entitled to a verdict."

Specifications of error: The Court below erred in charging the jury:—

1. That the evidence was that Wilson, after he purchased, "threatened the widow that, if she did not give him peaceable possession, he would resort to the law."

2. That "this was not illegal: and therefore when Wilson got possession, he got it for himself."

3. That Wilson "came in, not under, but hostile to the Shook title; his entry was that of a vendee of Fisher, and put a stop to the running of the statute:" and that "the widow's remaining there does not alter the case."

4. That the "defendants were entitled to a verdict."

*Drum*, for plaintiff in error.—The question is whether the manner of obtaining the possession would stop the running of the statute. Mrs. Shook was a trustee for her children: 2 *W. & Ser.*

[Shaffer *v.* Lowry.]

27 ; 10 *Watts* 289 ; 1 *W. & Ser.* 288 ; 6 *Harris* 471.  Where a party is put out by force or fraud, he cannot set up title as a bar to a recovery of the possession : 10 *Ser. & R.* 43 ; 18 *Johns.* 94 ; 2 *Ser. & R.* 352 ; 3 *Ser. & R.* 381 ; 9 *W. & Ser.* 208 ; 11 *Johns.* 504 ; 6 *Id.* 197 ; 6 *Watts* 388 ; 4 *W. & Ser.* 189 ; 4 *Ser. & R.* 467.

*Banks* and *Stewart*, for defendant in error.—It was not pretended that the Shook family had actual adverse possession for twenty-one years.  It commenced only in 1822.  Wilson entered in 1838 or 1839 ; and, if put in possession, they could not hold. Why was Wilson's conduct illegal ?  There was neither force nor fraud.  He was the owner of the land, and demanded the possession, and informed her he would resort to the law to obtain it, if she refused.  The owner may enter if he does it peaceably. ' After this there was no adverse possession : 1 *Jones* 189.

The opinion of the Court was delivered by

LEWIS, C. J.—The plaintiff claimed under the statute of limitations against the holder of the legal title in possession, but failed to show the continuance of an adverse possession for the period of twenty-one years.  As a substitute for it, he gave evidence to prove that Martin Shook, under whom he claims, died in possession, leaving his widow there.  That, in 1839, after James Wilson become the owner of the legal title, he induced the widow of Shook to .quit the possession by "threats of being thrown out by the sheriff."  At that time the adverse possession under which she claimed did not exceed seventeen years.  The heirs of Shook had no title.  Wilson had a right to bring ejectment, and, by means of legal proceedings, to expel her from the possession, and to compel her to pay damages and costs besides.  The threat was no more than an intimation that, if she did not cease to occupy his land, he would appeal to the law for redress.  She chose to leave the premises, and he took possession under his title as owner.  Her election to leave the premises was a wise exercise of judgment, because she could not by any possibility have held them against the rightful owner.  It was an honest, as well as a wise proceeding on her part, because she did no more than give up to the rightful owner the property which her predecessors had wrongfully deprived him of.  She says she was " *scared.*"  What at ?  Certainly not at James Wilson, for she purchased twenty acres of land from him, and afterwards married him and returned to the premises.  If she was scared at anything, it must have been at the probable expense and fruitless result of contesting the just claim of Wilson.  There was nothing in the transaction which entitles the heirs of Shook to claim the possession of Wilson as held under them.  The pinch of the case is, that their title depends on

[Shaffer v. Lowry.]

adverse possession continued for twenty-one years without interruption, and that the person intrusted with the business of keeping up this possession failed to do so, and could not have done so, if she had made the effort. The heirs may hold the widow responsible for unfaithfulness, if she has been guilty of it, but they cannot visit her sins upon others who have been guilty of no wrong: Koons v. Steele, 7 *Harris* 207.

There is no error in this record.

Judgment affirmed.